[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On August 28, 1997 I dismissed the plaintiff's consolidated tax appeals as to 60 motor vehicles and sustained its appeals as to three vehicles. All 63 vehicles had been subjected to property taxes by the defendant for the tax years 1992 through 1996. At the same time I found that the method of taxation employed by the defendant for the years 1994 through 1996 was improper and ordered it to recompute the plaintiff's taxes for those years and provide notice to the plaintiff of the corrected assessments and taxes due, and I accorded the plaintiff the right to a hearing at which any exceptions it might have to the corrected assessments and computations of taxes could be taken up. The defendant recomputed the assessments; the plaintiff duly filed exceptions; the hearing to consider them was held on December 11, 1997.
To put the issues raised at that hearing in context I should summarize my earlier findings on the taxability of the 60 vehicles to the plaintiff. At the trial of this matter the plaintiff, in its case in chief, offered no evidence as to the ownership of the vehicles but relied solely on a denial by its owner, William M. Lombardi, Jr., of any knowledge about or ownership interest in the vehicles. See also paragraph 2 of the plaintiff's Amended Application for review, dated November 27, 1996. This was consistent with its original position before the Board of Tax Review. See Exhibit B. I found Mr. Lombardi's testimony not worthy of belief. Nor did I find the testimony of the two witnesses offered to corroborate his testimony credible, for reasons spelled out in my memorandum of decision. Rather, I found that Mr. Lombardi engaged in a "scheme to evade the taxes properly due and payable to Waterbury" by forming a corporation in Wisconsin (which does not tax motor vehicles), Fox Rental Systems, and registering these vehicles to that corporation in either Wisconsin, Oregon (which also does not tax motor vehicles as personal property) or West Virginia. Based on these findings and applying the "instrumentality" and "identity" concepts ofZaist v. Olson, 154 Conn. 563 (1967), I disregarded the fiction of separate legal entities and held that "Lombardi (the plaintiff corporation) was the actual owner, through its CT Page 2389 connection with Fox, of the vehicles" on the tax dates in question.
I found no problems in the assessments of taxes due for 1992 and 1993. Because the defendant had simply "rolled over" the assessments for those years and made no independent assessment of the vehicles for 1994, 1995 and 1996, however, I ordered it to do so, in order that the taxes payable by the plaintiff could be accurately determined.
The plaintiff first takes exception to my order that the defendant recalculate the taxes due for 1994 through 1996. It sees that as an opportunity for the defendant to reopen the record to correct a deficiency in its proof at trial. It argues that, if the defendant is given that opportunity, the plaintiff should be given a chance to offer evidence that the vehicles in question, or some of them, were not owned by either it or Fox on some of the tax dates in question.
Section 12-117a, C.G.S., gives the court hearing a tax appeal "power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable". To allow the plaintiff to escape taxation entirely for 1994-96 under the circumstances of this case is the antithesis of what the statute requires of the court. The defendant's recalculation of the assessments, which resulted in a reduction of over a million dollars in the gross assessments and the penalties payable by the plaintiff, was essentially a ministerial act, and the plaintiff makes no serious claims of inaccuracies in the corrected assessments or the calculations of taxes due.
Is it inconsistent and unfair, however, to allow the defendant to make this recalculation, and deny the plaintiff the opportunity to reopen its case and adduce evidence of the actual ownership of the vehicles on the tax dates in question? Several considerations suggest an answer in the negative.
First, the whole thrust of the plaintiff's case at trial was that these vehicles were never owned by it and were completely unknown to the plaintiff's sole owner, Mr. Lombardi, not that they (or some of them) were owned by the plaintiff but not on the tax dates in question. This is the same stance the plaintiff took before the Board of Tax Review. Contrary to counsel's argument on December 11, 1997, nothing in the testimony CT Page 2390 at trial supports his claim that a representative of the plaintiff offered the Board documentation of the plaintiff's non-ownership of the vehicles at the time of its appeals from the assessments.
No reason appears why the plaintiff, having been unsuccessful in its position at trial, should have the opportunity to try a new tack now. In its written exceptions to the defendant's recalculation of the taxes due the plaintiff complains that its ability to present evidence of non-ownership of the vehicles on the tax dates in question was hamstrung by its receipt from the state, shortly before trial, of records it might have used to do so. These records had been seized in the course of a criminal and regulatory investigation of the plaintiff and Mr. Lombardi. Moreover, the plaintiff claims to have been hampered in its proof by the defendant's late production, for the first time on the day of trial, of the principal exhibit relied on to show the ownership of the vehicles in 1992 and 1993. First, no continuance was requested by the plaintiff to allow it further time to prepare for trial. Second, as pointed out above, such a demonstration of non-ownership would have been completely inconsistent with the plaintiff's theory of the case; viz., that it never owned these vehicles and knew nothing about them.
Finally, in its rebuttal the plaintiff attempted for the first time to introduce the possibility that it may have owned some of these vehicles but not on the tax dates in question. It did so by offering the testimony of a witness, who was not its employee, that she had examined certain records and spoken to certain people and, based on those contacts, was prepared to testify as to the "present status" of the vehicles in question. I have attached the entire transcript excerpt which contains this offer of proof. The proffered testimony was hearsay and properly objected to and excluded as such.
At the December 11 hearing plaintiff's counsel offered the same witness for the same purpose, claiming that her testimony should have been admissible under the business records exception to the hearsay exclusion. See Sec. 52-180, C.G.S. Whatever offer of proof the plaintiff wished to make on December 11 should and could have been properly made when the witness was offered at trial. Therefore, I denied the plaintiff the opportunity to make the same offer at the hearing on December 11. I undertook to review the offer made at trial. Having done so, I see no reason either to reverse my ruling at trial or to give the plaintiff CT Page 2391 another chance to make a more effectual offer of proof. Beside the fact that the witness was not an employee of the plaintiff, the document offered at trial, which was apparently (it was not marked for identification) a copy of Exhibit 3, annotated by the witness based on her consultation of records and conversations with "maintenance employees", was clearly one prepared for litigation not business purposes. Moreover, the three prerequisites for admissibility under the statute were not established through the witness. Lastly, the document and the witness' testimony concerning it were of questionable relevance as they were to be in response to questions concerning the "present status" of the vehicles not their status on the tax dates in question.
In short, not only did the plaintiff have an opportunity to show at trial what it wishes to show now, but it also attempted to do so, albeit ineffectually. I see no reason in fairness to give the plaintiff another chance to do what it could have done and attempted to do at trial.
The plaintiff further excepts to the reassessment of taxes on the ground that the defendant offered no evidence that the vehicles in question had a physical situs in Waterbury or even in Connecticut, as required (the plaintiff claims) by Section12-71b(g), C.G.S. This is a claim the plaintiff never advanced at trial. Likewise, the record does not reflect that it ever offered to the Board of Tax Review or the court any evidence as to the location of the vehicles anywhere but in Connecticut, information more readily available to it than to the defendant. As I found in my memorandum of decision, "(i)n several contexts courts have recognized a duty on the part of a taxpayer to submit information to the taxing authority relevant to the proper taxation of property". See cases cited at page 12 of the memorandum. Section 12-71b(g) is one such instance, where the burden is on the taxpayer not the taxing authority to prove that property is sited somewhere other than Connecticut.
Section 12-71b(g) must be read together with Section 12-59, which provides that, in the case of a Connecticut corporation, such as the plaintiff, its property "shall be . . . liable to taxation in the same manner as the property of individuals". Unregistered motor vehicles owned by individuals are presumed to be taxable in the town where their owner resides, "unless evidence, satisfactory to the assessor in such town, is submitted to the contrary". Sec. 12-71b(g). Since Sec. CT Page 239212-59 effectively makes the town in which a corporation has its principal place of business, in this case Waterbury, the functional equivalent of an individual taxpayer's residence, the town and the court are entitled to rely on the presumption of Sec. 12-71b(g) in the absence of satisfactory evidence to the contrary, evidence which was well within the capacity of the plaintiff to produce.
The plaintiff's last exception is that it introduced evidence that it had already paid tax on one of the vehicles for which the defendant is attempting to fix tax liability (#164 on Exhibit 3). In its examination of its last witness the plaintiff did introduce a certificate of registration (Exhibit U) for that vehicle. Neither that exhibit nor the very brief testimony in connection with it demonstrated that the plaintiff had already paid tax on it. Unlike the case of vehicle #131 on Exhibit 3, the defendant's tax collector was not asked and did not testify that it appeared to her that #164 had already been taxed by the defendant. Therefore, there is no basis in the record for excluding this vehicle from taxation.
All of the plaintiff's exceptions are overruled. The defendant is ordered forthwith to make the adjustments ordered at the conclusion of the hearing on December 11, 1997. Judgment shall enter in accordance with the orders entered by the court in paragraphs 1 and 2 on page 16 of its memorandum of decision dated August 28, 1997, in the amount calculated by the defendant in accordance with paragraph 3 on the same page of the same memorandum, as affected by the adjustments ordered by the court on December 11, 1997.
BY THE COURT
SHORTALL J.